Hillsborough,
No. 4956.

WAUMBEC MILLS, INC.

*v.*

BAHNSON SERVICE COMPANY.

Argued September 6, 1961.

Decided October 27, 1961.

463

*Wiggin, Nourie, Sundeen, Nassikas & Pingree* and *Dort S. Bigg* (*Mr. Bigg* orally), for the plaintiffs.

*Booth, Wadleigh, Langdell, Starr & Peters* and *Robert Chiesa* (*Mr. Booth* and *Mr. Chiesa* orally), for the defendant.

BLANDIN, J. The first question presented is whether the defendant, Bahnson Service Company, breached its contract with the plaintiff Waumbec Mills, Inc., to maintain liability insurance to protect the plaintiff against such claims as those arising out of the accident to the defendant's employees, Perry and Walsh. The record discloses the following facts: While working for the defendant upon the plaintiff's premises, performing work called for by the service contract between the plaintiff and defendant, the employees were injured by what the jury found to be, in whole or in part, the negligent maintenance by the plaintiff of certain electric wiring on its premises. Our court decided that neither a

workmen's compensation policy nor a liability policy held by the defendant with the Maryland Casualty Company, and which the former claimed fulfilled its agreement with Waumbec protected the plaintiff. *Maryland Cas. Co.* v. *Waumbec Mills,* 102 N. H. 200.

The defendant's argument that since the plaintiff engineer did not request to see the policy, as he had a right to do under the agreement, the plaintiff has waived its rights, does not impress us. No relinquishment of such rights under paragraph 42 is to be inferred from the mere neglect of the plaintiff to take advantage of an option, which was clearly for its benefit, to inspect the policies. The validity of the contract in no wise depended upon fulfillment of this option. It seems clear that the defendant has breached its agreement.

The next question, whether the plaintiff can recover the alleged damages caused by this breach, is one of much difficulty. The defendant Bahnson claims that since the plaintiff has been paid by the Employers Mutual Liability Insurance Company for the losses incurred, the plaintiff, even granting the contract was broken, has suffered no damages and hence can recover nothing under our law. *Mansfield* v. *Finance Corp.,* 99 N. H. 352, 354; *Dufton* v. *Bank,* 95 N. H. 299.

The plaintiff replies to this by arguing that the defendant may not mitigate damages caused by it to the plaintiff because the latter has independently taken out insurance covering these damages. *Rolfe* v. *Railroad,* 69 N. H. 476. In short, the plaintiff says that the defendant having breached its contract is not entitled to the benefit of the wronged plaintiff's insurance, especially when the defendant's breach consisted of its failure to procure insurance to cover the very loss sustained. *Clough* v. *Schwartz,* 94 N. H. 138, 141.

This principle has become so firmly established in our jurisprudence that in order to abrogate the rule in the limited circumstances of losses covered by fires set by railroads, the Legislature passed a special act which permits the railroad, paying the damages in the first instance, to reach the benefit of the owner's insurance. RSA 380:3. It follows the defendant's contention must be rejected.

It is further urged by the plaintiff that the payment by Employers to it was not absolute but conditional under a "Loan Receipt Agreement" between the plaintiff and Employers. The material portions of this agreement, after reciting the amounts paid to Perry and Walsh, were as follows:

"It being understood and agreed that said loan shall not bear interest and is payable only out of and to the extent of any net recovery that may be had pursuant to legal process to be instituted by said Waumbec Mills, Inc. . . . . against The Bahnson Company . . . seeking to recover from said The Bahnson Company . . . because of breach of a contract by and between said The Bahnson Company and said Waumbec Mills, Inc. . . . and because of the breach of said contract[s] . . . said Waumbec Mills, Inc. suffered and paid a judgment against it in the sum of . . . $17,500 in the action of Edward D. Perry against said Waumbec Mills, Inc. and suffered and paid a judgment against it in the sum of $5,000 in the action of John L. Walsh against said Waumbec Mills, Inc. . . . to recover damages on account of personal injuries, and did further suffer and pay on account of said actions in the legal defense of the same the further sum of $1,556.80. In the event for any reason whatsoever no recovery is effected in any action or proceeding referred to above, then Waumbec Mills, Inc. shall have no obligation of any nature whatsoever with respect to the above loan or to repay the same.

"As security for the payment of said loan, said Waumbec Mills, Inc. pledges to said Employers Mutual Liability Insurance Company of Wisconsin, the net amount or amounts of such recovery against said The Bahnson Company . . . and agrees to institute and prosecute such suit or suits or legal proceedings against said The Bahnson Company . . . and if required against the insurer of said The Bahnson Company . . . to determine by prompt legal proceedings the liability of said parties arising under said contract[s], which suit or suits or proceedings shall be brought at the sole expense and under the exclusive direction of said Employers Mutual Liability Insurance Company of Wisconsin.

"It is further expressly agreed that it is the intention of the parties to this agreement that the loaning of the said amount by the said Employers Mutual Liability Insurance Company of Wisconsin to said Waumbec Mills, Inc. under the terms of this agreement shall be considered a loan and not a payment, and that this agreement is entered into in order to lay a proper foundation to litigate the liability of said The Bahnson Company . . . to said Waumbec Mills, Inc. under the terms of said . . . contract and on account of the payment of said judgments and said legal expenses and without waiving any of the rights of the parties to this agreement."

This agreement is practically identical with the one in the leading case of *Luckenbach* v. *McCahan Sugar Co.*, 248 U. S. 139. In this case a shipper of goods which were damaged in transit had insurance of his own and also a valid claim against the carrier. After payment to the shipper by the insurance company, the shipper filed a libel for the sole benefit of its insurer against the carrier. The argument was made by the carrier that the payments were "unconditional payments of insurance," (*Id.*, 140) and that the right to demand repayment of the loan was "merely their right of subrogation parading in disguise." *Id.*, 141. A unanimous court, speaking through Mr. Justice *Brandeis,* rejected the carrier's contentions and, in allowing recovery by the shipper for the benefit of its insurer, spoke with reference to an agreement styled, as is the one before us, as "A Loan Receipt Agreement" as follows (*pp.* 147, 148, 149).

"Upon delivery of this and similar agreements, the shipper received from the insurance companies, promptly after adjustment of the loss, amounts aggregating the loss; and this libel was filed in the name of the shipper, but for the sole benefit of the insurers, through their proctors and counsel, and wholly at their expense. If, and to the extent (less expenses) that, recovery is had, the insurers will receive payment or be reimbursed for their so-called loans to the shipper. If nothing is recovered from the carrier, the shipper will retain the money received by it without being under any obligation to make any repayment of the amounts advanced. In other words, if there is no recovery here, the amounts advanced will operate as absolute payment under the policies. Agreements of this nature have been a common practice in business for many years . . . It is clear that if valid and enforced according to their terms, they accomplish the desired purpose . . . The carrier insists that the transaction, while in terms a loan, is in substance a payment of insurance; that to treat it as if it were a loan, is to follow the letter of the agreement and to disregard the actual facts; and that to give it effect as a loan is to sanction fiction and subterfuge. But no good reason appears either for questioning its legality or for denying its effect . . . Whether the transfer of money or other thing shall operate as a payment, is ordinarily a matter which is determined by the intention of the parties to the transaction."

We believe no significant distinction exists between this case and the situation confronting us to affect the principle of law involved.

It is true that in the case before us the plaintiff's own negligence caused or helped to cause the injuries which gave rise to the original claims against it. However, paragraph 42 of the agreement between the plaintiff and the defendant was plainly designed to protect the plaintiff against just such a contingency. Indeed this is ordinarily the purpose of all liability insurance and such a provision as paragraph 42 in no wise invalidates the contract. *General Acc. F. & L. Assur. Corp.* v. *Smith & Oby Co.*, 272 F. 2d 581, 583 (6th Cir. 1959). In the present case the intent of Waumbec and Employers, as specifically expressed in the Loan Receipt Agreement, was to treat the payment by Employers to Walsh and Perry as a loan to Waumbec. The words of Mr. Justice *Brandeis* seem particularly applicable to this agreement: "No good reason appears either for questioning its legality or for denying its effect." *Luckenbach* v. *McCahan Sugar Co., supra,* 148; see also, *National Shawmut Bank* v. *Johnson,* 317 Mass. 485. The plaintiff's suit directly against the defendant is well founded. *First National Bank of Ottawa* v. *Lloyd's of London,* 116 F. 2d 221, 226 (7th Cir. 1940).

The defendant suggests in oral argument that the insurance contract between the plaintiff and Employers provided that Employers should pay only its proportional share of the loss if plaintiff had other insurance. From this it is argued that the defendant, even if found liable, should only have to pay its proportionate share of the damages. This contention is not well founded. The plaintiff had no other insurance except the policy with Employers. Moreover the agreement between the plaintiff and the defendant contained no provision permitting the latter to take advantage of any insurance the plaintiff might have with a third party. Its obvious purpose was to place the entire burden of any loss on the defendant, and we hold that this purpose should be effected.

The plaintiff's right of recovery comprises all the damages which should have been within the contemplation of the parties when the contract was made. *McLaughlin* v. *Union-Leader,* 99 N. H. 492, 497-498. This includes not only the sums paid to Perry and Walsh, but the costs of defending their suits, including attorneys' fees and the amounts paid Maryland Casualty Company for workmen's compensation benefits paid to Perry and Walsh. *General Acc. F. & L. Assur. Corp.* v. *Smith & Oby Co.*, 272 F. 2d 581; see also *Mansfield* v. *Finance Corp.,* 99 N. H. 352; Annot. 77 A. L. R. 2d 1143.

In view of the conclusions reached, it appears unnecessary to consider whether Employers was subrogated to the rights of the plaintiff Waumbec, Inc.

The plaintiff excepted to the Trial Court's granting of the defendant's motion to cite in Employers as a party plaintiff on the grounds that Employers is not a real party of interest (*First National Bank of Ottawa* v. *Lloyd's of London*, 116 F. 2d 221, 225; see Annot. 132 A. L. R. 607, 609), and that the prejudicial fact of insurance should not appear. The defendant claims in this instance that there can be no prejudice because all the issues in regard to the written instruments are for our court to resolve. We agree that this is so. *Pettee* v. *Chapter*, 86 N. H. 419.

Whatever damages may be assessed will belong to Employers. In view of all the circumstances, the Court's order making Employers a party plaintiff was within its discretion. *Perkins* v. *Associates*, 100 N. H. 247, 248.

It follows the order is

*Remanded.*

All concurred.